J. A21020/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.S. | : | IN THE SUPERIOR COURT OF |
| v. | : | PENNSYLVANIA |
| | : | |
| R.H. AND J.H. | : | |
| | : | |
| | : | |
| APPEAL OF: J.S. | : | |
| | : | |
| | : | No. 982 EDA 2016 |

Appeal from the Order Entered February 29, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2010-FC-1558

BEFORE: BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.: **FILED SEPTEMBER 07, 2016**

Appellant, J.S., (Grandmother) appeals from the February 29, 2016

Order[1] entered in the Court of Common Pleas of Lehigh County which denied

Grandmother's oral Motion for Modification of Legal Custody and reinstated

the September 22, 2015 Order which denied Grandmother's Petition for

Contempt and Modification. After careful review, we affirm on the basis of

the trial court Opinion.

The trial court set forth the factual and procedural history as follows:

[R.H. (Father)] and [J.H. (Mother)] are the biological parents of
twin boys, J.H. and R.H., born [in] March [of] 2005. On July 2,
2011, by agreement of the parties, the Honorable William E.
Ford entered an order awarding [Father] and [Mother] joint legal

---

[1] The Order is dated February 26, 2016 but a review of the certified record
indicates it was filed February 29, 2016.

custody of the boys. [Father] was awarded primary physical custody and [Grandmother] received partial physical custody.

Under the partial physical custody agreement, the children are with [Grandmother] after school from Tuesday through Friday. The children then are driven to their father's home at or around 8:00 p.m. each evening after [Father] returns home from work.

On September 23, 2014, [Grandmother] filed a Petition for Contempt and Modification. In her petition, she alleged [Father] violated the July 2, 2011 custody order by failing to turn the children over to her on Fridays throughout the summer of 2014 and for failing to obtain health insurance for the children. [Grandmother] further sought modification based on an allegation that the children were being abused by [Father].

On September 8 and 10, 2015, the [c]ourt conducted hearings on [Grandmother]'s petition along with a similar petition filed by [Mother] which is not the subject of the instant appeal. The [c]ourt heard testimony from the parties, a psychologist, and [Grandmother]'s husband. The [c]ourt also interviewed the minor children individually in camera outside the presence of the parties and counsel but with the Court Reporter.

On September 22, 2015, the [c]ourt entered an order denying both contempt and modification petitions which included an extensive review of the [c]ourt's findings under the custody factors enumerated in 23 Pa.C.S.A. § 5328 and 5329.1. Based on those factors, the [c]ourt denied modification and maintained the existing custody arrangements. The only addition was that the [c]ourt directed the biological parents and [Father]'s paramour to enroll and participate in Co-Parenting Education classes.

Appellant filed her Notice of Appeal on October 22, 2015. The [c]ourt directed her to file a 1925(b) Statement, which she timely filed on November 18, 2015. Upon review of the issues complained of on appeal, the [c]ourt felt it was appropriate to request that the matter be remanded for purposes of interviewing the minor children with counsel present. The matter was remanded on or about January 6, 2016 and the [c]ourt re-interviewed the minor children on February 18, 2016. On February 29, 2016, the [c]ourt entered an order finding that the re-interviews did not yield any different information which

would necessitate modifying the September 22, 2015 Order. Accordingly, the September 22, 2015 Order was reinstated.

Trial Court Opinion, filed 4/22/16, at 3-4.

Grandmother timely appealed. Both Grandmother and the trial court complied with Pa.R.A.P. 1925.

Grandmother raises the following issues on appeal:

1. Did the trial court err in finding that [Father] is more likely to encourage and permit frequent and continuing contact between his children and [Grandmother]?

2. Did the trial court err in finding that [Father] has not committed past abuses of his children?

3. Did the trial court err in not finding that [Grandmother] was more qualified to perform parental duties on behalf of the children?

4. Did the trial court err in failing to find that [Grandmother] would be better able to provide for stability and continuity in the children's education, maturity, and judgment?

5. Did the trial court err in failing to find that [Father] has attempted to turn the children against [Grandmother]?

6. Did the trial court err in failing to determine that [Grandmother] is better able to maintain a loving, stable, consistent, and nurturing relationship with the children, and to attend to the daily physical, emotional, developmental, educational, and special needs of the children, than is [Father]?

7. Did the trial court err in failing to rationally consider the uncontradicted testimony of Dr. Ronald Esteve?

8. Did the trial court err in denying [Grandmother]'s request for co-legal custody and primary physical custody of her minor grandchildren?

Grandmother's Brief at 4-5.

Our standard of review regarding child custody matters is well settled:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*A.D. v. M.A.B.,* 989 A.2d 32, 35–36 (Pa. Super. 2010) (internal citations and quotation marks omitted).

In a child custody case, "the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *Id.* at 36 (internal citations and quotation marks omitted). When "ordering any form of custody" the trial court must consider the following sixteen factors:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

The Honorable Douglas G. Reichley, who presided at the hearing, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record, relevant case law, and applicable statutes in addressing Grandmother's challenges to the trial court's February 29, 2016 Order. After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion, which concluded that: (1) the trial court did not abuse its discretion when it denied Grandmother's Petition for Contempt and Modification; (2) although it is "unorthodox," the parental duties for the children are performed by a "three[-]person structure" and it is in the best interests of the children to maintain the physical and legal custody that was in place at the time of the hearing. *See* Trial Court Opinion, filed 4/22/16, at 5-16.

The parties are instructed to attach a copy of the trial court's Opinion to all future filings.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2016

- 6 -

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
### CIVIL DIVISION

RICHARD HOFFELD,                    )
                                    )
                    Plaintiff       )
                                    )
    vs ·                            )        Case No. **2010-FC-0870**
                                    )
JANICE HIGHLAND,                    )
                                    )
                    Defendant       )

---

JUDY SHANNON,                       )
                                    )
                    Plaintiff       )
                                    )
    vs.                             )        Case No. **2010-FC-1558**
                                    )                 **982 EDA 2016**
RICHARD HOFFELD, JANICE HIGHLAND,   )
                                    )
                    Defendants      )

**April 20, 2016**

**Appearances :**

Mark S. Sigmon, Esq. for Judy Shannon and Janice Highland

Michael E. Brunnabend, Esq. for Richard Hoffeld

**Douglas G. Reichley, J.**

### 1925(a) Opinion

Judy Shannon, Appellant, is appealing from the Order entered September 22, 2015 in the

above-captioned matters ruling on two Petitions for Contempt and Modification, one filed by

Appellee Janice Highland and the other by Appellant, the maternal grandmother.[1] Both petitions

---

[1] The within matter previously went up on appeal to the Superior Court under docket number 3232 EDA 2015. The Court entered a 1925(a) Opinion requesting that the matter be remanded to afford the Court the opportunity to interview the minor children with counsel for the parties present because counsel did not previously waive their presence during the initial interviews with the minor children. The Court conducted the re-interviews on February 18, 2016 in the

sought modification of the custody arrangement for Richard Hoffeld and Janice Highland's two twin boys, age 10. On September 22, 2015, the Court entered an order denying both petitions. Appellant Shannon is the only party appealing from the Court's decision.

### Factual and Procedural History

Richard Hoffeld and Janice Highland are the biological parents of twin boys, J.H. and R.H., born March 4, 2005. On July 2, 2011, by agreement of the parties, the Honorable William E. Ford entered an order awarding Hoffeld and Highland joint legal custody of the boys. Richard Hoffeld was awarded primary physical custody and Appellant received partial physical custody.

Under the partial physical custody agreement, the children are with Appellant after school from Tuesday through Friday. The children then are driven to their father's home at or around 8:00 p.m. each evening after Mr. Hoffeld returns home from work.

On September 23, 2014, Appellant filed a Petition for Contempt and Modification. In her petition, she alleged Mr. Hoffeld violated the July 2, 2011 custody order by failing to turn the children over to her on Fridays throughout the summer of 2014 and for failing to obtain health insurance for the children. Appellant further sought modification based on an allegation that the children were being abused by Mr. Hoffeld.

On September 8 and 10, 2015, the Court conducted hearings on Appellant's petition along with a similar petition filed by Janice Highland which is not the subject of the instant appeal. The Court heard testimony from the parties, a psychologist, and Appellant's husband. The Court also interviewed the minor children individually *in camera* outside the presence of the parties and counsel but with the Court Reporter.

---

presence of counsel and entered the order that is partially the subject of the instant appeal on February 29, 2016.

3

34

On September 22, 2015, the Court entered an order denying both contempt and modification petitions which included an extensive review of the Court's findings under the custody factors enumerated in 23 Pa.C.S.A. § 5328 and 5329.1. Based on those factors, the Court denied modification and maintained the existing custody arrangements. The only addition was that the Court directed the biological parents and Mr. Hoffeld's paramour to enroll and participate in Co-Parenting Education classes.

Appellant filed her Notice of Appeal on October 22, 2015. The Court directed her to file a 1925(b) Statement, which she timely filed on November 18, 2015. Upon review of the issues complained of on appeal, the Court felt it was appropriate to request that the matter be remanded for purposes of interviewing the minor children with counsel present. The matter was remanded on or about January 6, 2016 and the Court re-interviewed the minor children on February 18, 2016. On February 29, 2016, the Court entered an order finding that the re-interviews did not yield any different information which would necessitate modifying the September 22, 2015 Order. Accordingly, the September 22, 2015 Order was reinstated.

Appellant filed the instant Notice of Appeal on March 28, 2016. She filed a Concise Statement on April 12, 2016.

This Opinion follows.

4

In Appellant's 1925(b) Statement, she raises twelve allegations of error, all of which allege abuse of discretion with respect to various factors courts are directed to consider in entering rulings on custody matters. For the reasons set forth herein, all of Appellant's issues are meritless.

In reviewing a trial court's determination in a custody case, the standard of review is abuse of discretion and the scope of review is broad. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citing *M.P. v. M.P.*, 54 A.3d 950, 953 (Pa. Super. 2012)). The Superior Court is required to accept the trial court's findings that are supported by the evidence, and it must "defer to the trial judge regarding credibility and weight of the evidence." *Id.* While the trial judge's deductions and inferences from its factual findings are not binding upon the Superior Court, the Superior Court may only reject the trial court's conclusions if "they involve an error of law or are unreasonable in light of its factual findings." *Id.*

When a trial court orders a form of custody, the best interest of the child is paramount. *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011). The General Assembly has directed that in determining the child's best interest, the trial court must consider the following 16 factors when "ordering any form of custody." 23 Pa.C.S.A. § 5328(a). These factors are:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and an other party.
(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
(3) The parental duties performed by each party on behalf of the child.
(4) The need for stability and continuity in the child's education, family life and community life.
(5) The availability of extended family.
(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

A seventeenth factor was added to this list in 2014 which requires the trial court to consider child abuse and any involvement with protective services. 23 Pa.C.S.A. § 5329.1.

The Court will now address each of Appellant's contentions individually.

### _Whether the Court erred in finding that Richard Hoffeld is more likely to encourage and permit frequent and continuing contact between his children and Appellant and Defendant Janice Highland_

Appellant argues the Court erred in concluding that Richard Hoffeld is more likely to encourage and permit frequent and continuing contact between the children and the other part

In the Court's order entered September 22, 2015, the Court observed with respect to this facto

> [T]here was not any evidence presented that the Respondent had inordinately or deliberately interfered in the exercise of partial custody by Petitioners, nor that he failed to encourage and allow frequent contact between the children and the Petitioners. The children spend four afternoons per week and portions of two Sundays per month with the Petitioners. Ms. Highland is still not in a position

_2010-FC-0870, 2010-FC-1558_

where she can have the children spend any overnights at her own residence. The Petitioners allege they were denied custody to allow the children to attend picnics or weddings, but Hoffeld countered he was only notified of these occasions at the last minute. There is palpable antagonism between Hoffeld and Highland, but there is not any evidence this has spilled over into Hoffeld preventing contact between the boys and their mother or grandmother. This factor is weighed in favor of Respondent.

(Order, September 22, 2015, at 2.)

In support of her assertion of this issue, Appellant's Concise Statement cites to various pages of the transcript from the two-day custody trial in September of 2015. The testimony cited from the September 8, 2015 hearing was offered by Dr. Ronald Esteve, who testified as an expert in the field of Clinical Psychology with a specialty in custody cases. Dr. Esteve testified that Mr. Hoffeld was "openly disparaging" of Ms. Highland when the two of them spoke in private. (N.T 9/8/15, p. 32.) Dr. Esteve testified he suspected this disparagement continued in front of the children. (*Id.*) However, there was not any testimony that Mr. Hoffeld has allowed his personal feelings toward Ms. Highland or Appellant to impact upon his allowing the children to maintain contact with them.

Appellant cites several pages from the transcript of the September 10, 2015 hearing as well. One excerpt of testimony is particularly relevant to this issue:

> THE COURT: Regardless of whatever Dr. Esteve may have had in his report, do you believe there's value between you and Ms. Highland trying to have some kind of a workable relationship so that you are able to communicate for the sake of your sons?
>
> MR. HOFFELD: We do. She will text me and say, I have off this Sunday. Can I have the boys? I'll message back, okay. That's pretty much the extent of it. There's never any harsh words on her part or on mine. It's just, can I have the boys? Okay. And that's it.
>
> THE COURT: And on the Sundays when she does exercise the partial custody, does Ms. Highland drive to your residence? Do you drive the boys down?

MR. HOFFELD: She picks them up. And that was the original order, that she can pick them up, have them for a certain time, and then bring them home.

THE COURT: So, she does transportation both ways on those Sundays?

MR. HOFFELD: Yeah because then she's going from our house to church, from church to get something to eat, and then bringing them back.

THE COURT: So, the two of you have not had an occasion to attend something at the same time for your children?

MR. HOFFELD: No.

(N.T. 9/10/15, pp. 115-117.)

This sort of interaction is consistent with the body of testimony the Court received during the hearings. The parties maintain contact, albeit minimal, among themselves and the children have frequent contact with each of them. Ms. Highland was called on redirect and testified:

> Q. Now, there was also testimony from Richard about, at the present time, say within the last six months, six months to a year, you and he have all kinds of communication back and forth; is that true?
> A. No.
> Q. Tell us what the status of that communication between you and Richard is at the present time let's say, within the last six months?
> A. It would be me asking him via text message can I get the kids on a Sunday for church and not getting a response. Or maybe just getting one letter, hey, response.

(*Id.* p. 135-36.)

The transcript supports the Court's weighing the factor of encouraging and permitting frequent contact between the children and their mother in favor of Mr. Hoffeld. While the extent of the contact between the parties is minimal, there was not any evidence to support a finding that Mr. Hoffeld sought to prevent contact between the other parties and the children. Accordingly, the Court's ruling was reasonable and consistent with the evidence.

## Whether the Court erred in failing to permit counsel to be present for the in camera interviews with the minor children

This issue is moot. As discussed in Footnote 1, *surpa*, the Court requested that the case be remanded from the original appeal so that the children could be re-interviewed with counsel present. That re-interview in the presence of counsel took place on February 18, 2016. This issue has therefore been resolved.

## Whether the Court erred in finding that Mr. Hoffeld has not committed past abuses of the children

Dr. Esteve testified the minor children feared their father and have an unrealistic description of him. He testified the children were forced to stand for extended periods of time as a form of punishment.

Mr. Hoffeld testified that he has spanked one of the minor children, R.H., on two occasions. (N.T. 9/10/15, p. 80.) He acknowledged he used to make the children stand in corners, but more recently the children have been required to read while sitting at the table as a form of punishment. (*Id.* pp. 80-81.) During the *in camera* interview with the children conducted on February 18, 2016 in the presence of counsel, the boys testified about this form of punishment and indicated Mr. Hoffeld's paramour has made them read historical books and write book reports. (*See* N.T. 2/18/16, p. 40.) Upon consideration of all the evidence, the Court found the testimony of Mr. Hoffeld more credible. The boys' descriptions of their home lives were consistent with Mr. Hoffeld's testimony. In addition, the Court did not find that there was any evidence of abuse or patterns thereof. Accordingly, the Court's determination was consistent with the evidence.

*2010-FC-0870, 2010-FC-1558*

*Whether the Court erred in not finding that Judy Shannon was more qualified to perform parental duties on behalf of the children*

The Court determined that this was a neutral factor as among the parties. As the Court explained in the custody order:

> [Mr.] Hoffeld is able to perform the normal parental duties of feeding, clothing, and providing shelter for the children. Between he and his paramour, the boys are assisted with their schoolwork. The boys are picked up and taken to Ms. Shannon's home four days per week after school. They see their mother at Shannon's home. They do their homework while at their grandmother's and have s ome meals there. As a result, though unorthodox, the parental duties for the c hilden are performed by this thr ee peson structure.

(Order, September 22, 2015, at 3.)

Appellant Shannon argues the Court erred by not finding that she is more qualified to perform parental duties on behalf of the children. As the Court observed, the circumstances, though unorthodox, work for the parties and for the children. In the *in camera* interviews with the children, they expressed a preference to spend time with both of their parents. This arrangement accomplishes that goal. While Appellant feels she would be better able to take car of the children, the Court found that upon consideration of the totality of the evidence, it is in tl boys' best interest to spend a more or less equal amount of time with all three of the parties in this case. Accordingly, the Court properly determined this factor was neutral.

*Whether the Court erred in finding the need for stability and continuity in the children's education, maturity, and judgment is a neutral factor*

As the Court explained in the September 22, 2015 order, and as set forth above, "the arrangement the parties have constructed provides the parity both the parties and the children desire." (*Id.*) Ms. Highland shares an apartment with another adult. Consequently, she sees the children at the home of her mother, Appellant Shannon. Appellant sought both legal and physic custody and for the boys to live with her and her husband. However, this is not what the boys

want, which is a factor the Court must consider. While both of the boys have Individual Education Plans, they are performing well under those plans. There was not any evidence to suggest the boys are experiencing a detrimental impact from the current living arrangement. In fact, the circumstances currently in place contribute to the boys' stability and continuity in education, maturity, and judgment because they are able to spend time with both of their parents and their maternal grandparents in a relatively consistent, routine manner.

### *Whether the Court erred in finding the children prefer to live with their father as opposed to Appellant*

Appellant asserts the Court erred in concluding the boys wish to live with their father. This issue, as presented by Appellant, is a mischaracterization of the Court's decision. The Court determined and stated repeatedly in its order that the circumstances in the parties' homes where the boys share roughly equal time with both parents is a good, healthy arrangement that serves their best interests. The Court did not find that the children should live *exclusively* with Mr. Hoffeld.

Appellant's Concise Statement cites a number of pages in the transcripts from the hearings in support of this assertion, but the pages cited do not offer factual support. In some instances, there is nothing relevant to this topic on any of these pages. For example, Appellant refers the Court to page 66 of the September 10, 2015 hearing. A careful review of everything on and around that page indicates there is not any testimony contained therein relating to the issue for which Appellant cites it. This is true of many of the citations to the record in Appellant's Concise Statement.

The Court conducted two separate *in camera* interviews with the children, one without counsel present and a second with counsel present. During both interviews, the children were consistent in their expression that they wished to have equally divided time with both parents.

When Appellant testified, she was asked by counsel whether she believed the minor children love her. (*Id.* p. 27.) She answered in the affirmative and explained that the boys show that love as follows:

> Oh, I get hugs. And like I said, I don't get kisses anymore. I get told all the time, I love you grandma. They walk in the door, and there's a big hug. I love you grandma. Or if I pick them up from school, I got one on this side and one on this side, and we're walking arm in arm, and we're talking all the time. What do you have for homework? What did you do? This and that. It's just a big old happy thing. We're in the car, we're talking. You know, what happened at school? What we did, everything. What are you making for supper grandma?

(*Id.*)

This explanation does not constitute an error on the Court's part in concluding the children prefer to split their time living with their father and going to their grandparents' house. The evidence of record demonstrated that the current arrangement is preferable for the parties to foster the children's best interests. While the Court does not doubt Appellant's affection for the children or her ability to care for them, awarding Appellant custody of the minor children and reducing their time with their father is not in their best interests.

### *Whether the Court erred in finding Mr. Hoffeld has not attempted to turn the children against Judy Shannon and Janice Hoffeld*

According to the testimony the Court received, while Mr. Hoffeld openly acknowledged his animosity toward Ms. Highland, he does not make negative comments about her to the children or in their presence. He has not prevented the children from spending time with Ms. Highland or Ms. Shannon.

1

Appellant cites several pages from the transcripts in support of her assertion, but aside from conjecture offered by Dr. Esteve indicating he suspected Mr. Hoffeld is openly dismissive toward Ms. Highland in front of the boys, the record does not contain any evidence to substantiate the claim that Mr. Hoffeld attempts to turn the children against Appellant or Ms. Highland. Rather, the record shows that Mr. Hoffeld, while hostile toward Ms. Highland, does not communicate that hostility to or in front of the boys. Dr. Esteve opined the boys "seem to be under some kind of belief that if the father is not successful in this dispute with the mother and grandmother, then that relationship will fail." (N.T. 9/8/15, at 33.) Notwithstanding whether Dr. Esteve's opinion is accurate, this does not indicate that Mr. Hoffeld has endeavored to turn the boys against Ms. Highland or Appellant. Accordingly, this issue is meritless.

*Whether the Court erred in determining that the parties' respective abilities to maintain a loving, stable, consistent and nurturing relationship with the children and attending to their daily physical, emotional, developmental, educational, and special needs were neutral factors*

In addressing the factors of loving and stable environment for the children and which party is more likely to attend to the children's daily needs, the Court found both factors to be neutral. As the Court explained:

> Both parents are able to provide a loving and stable environment for the children, albeit that Highland has provided such a nurturing atmosphere through her mother's care. Ms. Shannon also provides a consistent and caring home for her grandsons, and the two children are the beneficiaries of having two households who care so much for them.

(Order, September 22, 2015, at 4.)

Appellant takes issue with the fact that the Court found this factor to be neutral instead of finding in her favor. However, a review of all of the evidence indicated that the two households

in which the children live are loving and stable environments for them. While the households are different in many respects, neither environment is unstable or inconsistent.

Regarding the factor of which party is more likely to attend to the children's daily needs, the Court explained:

> Both Mr. Hoffeld and Ms. Shannon demonstrated the ability and intent to attend to the daily needs of the children. It is very clear Ms. Shannon and Ms. Highland disagree with the manner in which Mr. Hoffeld is raising the two children, including Hoffeld's decision not to purchase health insurance, not to be able to alter his work schedule to attend parent-teacher conferences, his lack of faith in psychological assessments, and the aspects of living conditions in his home. While these are all legitimate factors upon which to disagree, individually and collectively, they are not disqualifying qualities against Mr. Hoffeld. Ms. Shannon has expressed an open interest in providing a different type of environment for the children, where she and her husband would provide for the daily needs of the children. Ms. Shannon's intent is admirable but it is not enough to transfer primary custody to her.

(*Id.* at 4-5.)

The record supports this conclusion. The testimony indicated that all parties love the boys and actively work to tend to their daily needs. Appellant's perspective is that she can provide a better environment for the boys. However, the evidence reflected that Mr. Hoffeld is capable of providing a healthy and loving environment for the boys, albeit a different environment than the one envisioned by Appellant.

### *Whether the Court erred in failing to find that the uncontradicted testimony of Dr. Ronald Esteve was credible and relevant*

Appellant's issue is a mischaracterization of the Court's determination. When reviewing a custody petition, courts are tasked with establishing a workable situation which promotes the children's best interests. In doing so, courts are required to consider the statutory factors set forth by the General Assembly. 23 Pa.C.S.A. §§ 5328, 5329.1. The Court received the testimony of Dr. Esteve and took it into consideration in this case. However, that testimony is one factor

14

among many. As the Court's extensive order entered in this case set forth, there were numerous other factors at play. The Court did *not* find that Dr. Esteve's testimony was irrelevant or non-credible. Appellant more accurately takes issue with the weight the Court afforded to Dr. Esteve's testimony.

The Court received testimony from all of the parties, Mr. Hoffeld's paramour, and the minor children. Upon consideration of all of the testimony and the evidence submitted in this case, the Court determined that the arrangement the parties had at the time of the hearings properly advanced the children's best interests. Appellant's disagreement with the Court's conclusions does not equate to legal error or abuse of discretion.

### *Whether the Court erred in denying Appellant's request for co-legal custody and primary physical custody of the minor children*

As set forth in the preceding discussion, the Court determined in this case that the physical custodial arrangement between the parties worked to achieve the children's best interests. Mr. Hoffeld and Ms. Shannon both maintain stable, loving homes for the boys, and Mi Hoffeld's paramour is a positive influence on the boys. She further acts as a conduit between Mi Hoffeld and Ms. Highland. The boys expressed a preference to maintain approximately equal time with each parent. (*See* N.T. 2/18/16, pp. 28, 77-78.) There was not any evidence to support a finding that granting primary physical custody to Ms. Shannon was in the boys' best interest.

Similarly, Mr. Hoffeld and Ms. Highland share joint legal custody. While the Court acknowledged Appellant's interest in obtaining legal custodial rights so she can communicate with the children's school, Mr. Hoffeld and Ms. Highland are actively involved in the children's lives. To the extent any communication with the school is necessary, the boys' parents can correspond with the school and would be free to share any information with Appellant they

1

deemed appropriate. However, the Court did not find that that there was any evidentiary support in favor of awarding Appellant co-legal custody for that purpose. Accordingly, the Court's decision to deny Appellant's requests for primary physical custody and co-legal custody was appropriate.

## Conclusion

As the Court set forth in its Order of September 22, 2015, Mr. Hoffeld and Ms. Highland as the parents of the minor children at issue in this matter, need to improve their level of communication with one another. However, having carefully considered all of the testimony and evidence, the Court properly determined that the physical and legal custodial circumstances in place at the time of the hearing were in the boys' best interests. Appellant's disagreement with the Court's findings and the weight afforded to certain factors does not mean that the Court abused its discretion or committed an error of law. In fact, many of the factors which Appellant challenges on appeal were factors the Court deemed to be neutral. The evidence supported the Court's findings. As a result, the Court respectfully recommends that its Order of September 22, 2015 and the companion order entered February 29, 2016 be **AFFIRMED**.

By the Court:

Douglas G. Reichley, J.

16

47